## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

CSX TRANSPORTATION, INC.
500 Water Street
Jacksonville, Florida 32202-4423

            Plaintiff,

       v.

JONATHAN KENNETH CLARK
3507 148th Avenue NE
Ham Lake, MN 55304

and

ANDREW CLARK
15350 Everton Avenue North
Hugo, Minnesota 55038

and

LINDA CLARK
4009 Overlook Lane
Superior, WI 54880

            Defendants.

CIVIL ACTION

CASE NO. _____

## COMPLAINT

### Jurisdiction

1.    This Court has personal jurisdiction over all defendants in this matter as all

defendants are citizens of Minnesota, and/or engaged in fraudulent transactions within the

State of Minnesota, and/or received fraudulently-transferred funds conveyed from a

Minnesota company.

2.      This Court has jurisdiction over the claims at issue pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00.

3.      Jurisdiction also exists over all claims pled pursuant to 28 U.S.C. § 1367 as all causes-of-action arise from a common nucleus of operative facts.

## Venue

4.      Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) because a substantial part of the events or omissions giving rise to the causes of action set forth in this Complaint occurred within this judicial district and all defendants either reside within this district or regularly conducted business within the district.

## Parties

5.      Plaintiff CSX Transportation, Inc., ("CSXT"), is a Virginia corporation with its principal place of business in Jacksonville, Florida.

6.      Upon information and belief, defendant Jonathan Kenneth Clark is a citizen of the State of Minnesota and has a principal residence of 3507 148th Avenue NE, Ham Lake, Minnesota 55304.

7.      Upon information and belief, defendant Andrew Clark is a citizen of the State of Minnesota and has a principal residence of 15350 Everton Avenue North, Hugo, Minnesota 55038.

8.      Upon information and belief, defendant Linda Clark is a citizen of the State of Wisconsin and has a principal residence of 4009 Overlook Lane, Superior, WI 54880.

## Predicate Facts

9.      At all times material to the claims at issue, defendant Jonathan Kenneth Clark, ("Jon Clark"), held a ninety-percent ownership interest in JRC Investments, d/b/a, Advanced Concrete Solutions, ("ACS").

10.      Joan Renae Clark, Jon Clark's wife, held the remaining ten-percent interest in ACS.

11.      Jon Clark also is the registered agent and sole shareholder of Clark Brothers Investments, d/b/a, Superior Rock, ("CBI"), a Florida corporation, (ACS and CBI are collectively referred to as "the Clark entities").

12.      The Clark entities regularly commingled funds amongst each other, and Jon Clark's family and the Clark entities were completely controlled and dominated by Jon Clark.

13.      Prior to 2006, ACS operated as a concrete contractor in Minnesota and also engaged in aggregate material supply services for the construction industry.

14.      By 2006, ACS had become less profitable and Jon Clark decided to move his business operations to Florida and focus primarily on aggregate rock supply.

15.      Jon Clark thereafter formed CBI to conduct business in Florida for the purpose of selling aggregate material.

16.      In early 2007, ACS ceased operating as a concrete contractor.

17.      CSXT is a corporation which operates as an interstate freight rail carrier.

18.      CSXT offers an opportunity for established companies with credit histories to apply for lines of credit through CSXT.

19.    In April of 2007, Jon Clark submitted an Application and Credit Agreement on behalf of ACS to CSXT.   In the Credit Agreement, ACS agreed "[t]o pay all undisputed charges billed by CSXT so that payment is received by CSXT within 15 days of the date of each bill."  (Exhibit A)(Application and Credit Agreement).

20.    On April 20, 2007, CSXT executed the Credit Agreement and extended credit to ACS.

21.    While Jon Clark never intended to have ACS participate in his Florida business ventures, Clark used ACS' line of credit with CSXT to transport rock and other aggregate construction materials to a location in Newberry, Florida for the benefit of CBI and Jon Clark.

22.    CBI and Jon Clark sold the freight that CSXT transported to various purchasers in Florida.

23.    All transportation services and credit provided by CSXT were provided only at the request of ACS.

24.    In the four months from May 23, 2007 until September 30, 2007, ACS accrued a total of $273,766 in outstanding freight charges due to CSX.  After making a nominal payment, from October 1, 2007 through November 7, 2007, ACS quickly accrued additional freight charges of $534,689, an amount almost double that which it had accrued over the previous four-month period.

25.    By November of 2007, the total amount of outstanding freight charges accrued by ACS had quickly escalated to $808,455.00.

26.    ACS received invoices from CSXT for all freight charges.

27.   Total payments of $12,540 were made on these charges by ACS.

28.   Neither Jon Clark, ACS, nor CBI ever made any additional payments to CSXT with respect to the line of credit obtained on behalf of ACS or the transportation services performed.

29.   The $808,455.00 in freight charges incurred for CSXT's transportation of the goods sold by CBI is not included in CBI's financial records as a cost of goods sold.

30.   The CSXT transportation charges relating to the freight are not mentioned in CBI's financial records as an account payable, either directly to CSXT or to ACS.

31.   The cost of local truck transportation of the freight moved and the cost of transporting the freight with a local rail carrier were included in the cost of goods sold by CBI in its financial records.

32.   After ACS obtained the line of credit from CSXT, ACS never had a positive balance on its ledger, and CBI never had a positive balance on its general ledger exceeding $51,000.00.

33.   CBI received approximately $990,965.39 in revenue during the time that it was operational in 2007 and 2008.  (Exhibit B)(2007 CBI General Ledger); (Exhibit C)(2008 CBI General Ledger).

34.   CBI did not maintain a balance in its bank account after March 2008.

35.   In late 2007, Jon Clark informed CSXT that he would make a payment of $300,000 on accrued freight charges no later than December 21, 2007.

36.     In early December 2007, Jon Clark assured CSXT that he would "remit a check to CSX[T] for around $600,000 - $650,000" after he received a payment for a project "just after the first of January [2008]."

37.     Jon Clark never made these payments to CSXT.

38.     While operating CBI, Jon Clark transferred substantial amounts of cash for his and his family's personal benefit; while, at the same time, he continued to accrue charges on ACS's line-of-credit with CSXT.

39.     Between June 2007 and March 2008, the following transfers of cash, withdrawn funds, and payments were made by Jon Clark from ACS accounts to or on behalf of himself and his family:

| Payee | Amount | Description |
|---|---|---|
| Andrew Clark | $38,000.00 | Payment to a family member |
| Ameris Bank | $29,618.00 | Payment on personal loan |
| Cash | $34,300.00 | |
| Wires | $93,480.00 | No recipient account identified |
| Central Mortgage | $19,710.00 | Mr. Clark's Mortgage |
| Citi Mortgage | $8,733.00 | Mr. Clark's Mortgage |
| Community Bank | $77,211.00 | Loan Payments for Clark Family Member |
| Countrywide Bank | $20,550.00 | Mr. Clark's Mortgage |
| Discover | $2,500.00 | Mr. Clark's Credit Card |

| FIA Card Services | $8,105.00 | Mr. Clark's Credit Card |
|---|---|---|
| Chase Card | $2,014.00 | Mr. Clark's Credit Card |
| GMAC Mortgage | $11,033.00 | Mortgage Held by Clark Family Member |
| Jon Clark | $30,300.00 | |
| Linda Clark | $18,100.00 | |
| Peter Clark | $14,800.00 | |
| Renee Clark | $5,200.00 | |
| US Bank | $19,900.00 | |
| WAMU | $6,739.00 | |
| Total | $440,293.00 | |

(Exhibit E)(AmerisBank Records).

40. On May 7, 2008, a judgment was entered in favor of CXST and against ACS for the freight charges owed in the amount of $808,455.00 by the U.S. District Court for the District of Minnesota.

41. On June 9, 2009, Jon Clark and his wife, Renae Clark, filed a petition for bankruptcy protection under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota.

42. On December 17, 2009, CSXT filed an amended complaint with the Bankruptcy Court seeking an exception to discharge, as to Jon Clark, based upon fraud under 11 U.S.C. § 523(a)(2)(A).

43.    In pursuing this case, CSXT alleged that Jon Clark fraudulently charged ACS' line of credit held with CSXT to benefit himself and CBI, his new Florida company, without notifying CSXT of his intentions.

44.    On December 8, 2010, CSXT's complaint for an exception to discharge was tried before Judge Nancy C. Dreher, United States Bankruptcy Judge.

45.    On February 23, 2011, Judge Dreher ruled that the debt Jon Clark owed CSXT was non-dischargeable under 11 U.S.C. § 523(a)(2)(A).  (Exhibit D)(Findings of Fact, Conclusions of Law, and Order for Judgment p. 12).

46.    In issuing this ruling, Judge Dreher made the following findings:

> CSX[T] has presented a credible set of circumstances that favor its claim.  Debtor's [Jon Clark's] actions were headstrong, knowing, and intentional.  He knew that CBI would not have been eligible for a line of credit, that ACS was finished, and that CBI would be hauling the freight, yet he applied for credit under the guise of ACS.  While the freight charges increased, CBI hauled aggregate at a cost and profit margin that made it impossible to pay off the freight charges...from the time he first applied for credit via ACS to his last draw on ACS's line of credit on behalf of CBI, **Debtor [Jon Clark] never intended to pay off the debt – and he knew such payments were not going to be made – within each required 15-day payment period and beyond.  Therefore, the...evidence...has convinced me that Debtor [Jon Clark] intended to deceive CSX[T] with knowingly false information.  When Debtor [Jon Clark] represented that ACS would use CSX[T]'s line of credit and repay the debt, he knew he would, and did in fact, use that line of credit to benefit CBI and himself while never intending to repay.**

(Exhibit D at p. 11)(Bold added).

47.     Prior to Judge Dreher's decision, the parties stipulated that: (1) Jon Clark made representations to CSXT; (2) CSXT justifiably relied on such representations; and (3) CSXT sustained a loss as a result of the representations made by Jon Clark.

48.     As such, Judge Dreher's decision acted as an adjudication of all elements of an exception to discharge under 11 U.S.C. § 523(a)(2)(A).

49.     Jon Clark did not appeal Judge Dreher's findings, conclusions, and order of judgment.

50.     According to the Federal Rules of Bankruptcy Procedure, Judge Dreher's findings became final on March 9, 2011.

### Causes of Action

### COUNT I – COMMON LAW FRAUD AGAINST JONATHEN KENNETH CLARK

51.     CSXT incorporates each and every allegation above as if fully stated here.

52.     Beginning on May 23, 2007 and continuing through November 2007, ACS incurred $808,455.00 in freight charges for the interstate transportation of freight by rail.

53.     In order to have the freight moved by rail, ACS utilized a line of credit established with CSXT.

54.     With each load of freight tendered to CSXT, Jon Clark made an implied representation that ACS, through the active operation of its business, intended to repay the trade debt incurred to ship the freight moved.

55.     At the time Jon Clark made these representations, he knew that they were false because he was ordering the movement of freight on behalf of himself and his other

company, CBI, and ACS had no source of income whatsoever. CBI did not obtain credit with CSXT, did not list CSXT as a creditor on its corporate books, and could not possibly pay for the debt that was being incurred as CBI's total sales while operational were almost matched by the cost of shipping the freight involved.

56.   Jon Clark never informed CSXT that ACS had ceased operations, nor did he tell CSXT that he was really transporting shipments of freight on behalf of himself and CBI.

57.   In reliance upon the representations made, CSXT shipped freight on fourteen different dates charging a total of over $800,000.00 to the ACS line of credit.

58.   The balance owed for these shipments is $794,305.00.

**WHEREFORE,** plaintiff CSX Transportation, Inc. respectfully demands that judgment be entered in its favor and against defendant Jonathan Kenneth Clark in the amount of $794,305.00, plus punitive damages, interest, and attorneys' fees, and such other relief as the Court may allow.

## COUNT II – COMMON LAW FRAUD AGAINST JONATHAN CLARK ESTABLISHED BY COLLATERAL ESTOPPEL

59.   CSXT incorporates each and every allegation above as if fully stated here.

60.   After a contested trial at which all parties were represented by counsel, on February 23, 2011, the United States Bankruptcy Court for the District of Minnesota entered a judgment finding that Jon Clark had defrauded CSXT.

61.    The court specifically found that Jon Clark made false representations of his intent to repay a trade debt, through the use of his company ACS, and that CSXT relied upon those false representations to extend over $800,000 in credit.

WHEREFORE, plaintiff CSX Transportation, Inc. respectfully demands that judgment be entered in its favor and against defendant Jonathan Kenneth Clark in the amount of $794,305.00, plus punitive damages and attorneys' fees, together with all costs, prejudgment interest, and such other relief as the Court may allow.

## COUNT III – FRAUDULENT TRANSFER CLAIM AGAINST JONATHAN CLARK

62.    CSXT incorporates each and every allegation above as if fully stated here.

63.    Jon Clark transferred commingled funds between the Clark entities to himself, his creditors, his family, and his family's creditors, while the Clark entities were failing businesses.

64.    Jon Clark did this while incurring a trade debt that exceeded the total sale price of the goods that were moved by CSXT.

65.    Between June 2007 and March 2008, Jon Clark made the following specific transfers with CBI funds, which were facilitated by the sale proceeds of the freight transported by CSXT:

| Payee | Amount | Description |
|---|---|---|
| Andrew Clark | $38,000.00 | Payment to a family member |
| Ameris Bank | $29,618.00 | Payment on personal loan |
| Cash | $34,300.00 | |

| Wires | $93,480.00 | No recipient account identified |
|---|---|---|
| Central Mortgage | $19,710.00 | Mr. Clark's Mortgage |
| Citi Mortgage | $8,733.00 | Mr. Clark's Mortgage |
| Community Bank | $77,211.00 | Mortgage held by Clark Family Member |
| Countrywide Bank | $20,550.00 | Mr. Clark's Mortgage |
| Discover | $2,500.00 | Mr. Clark's Credit Card |
| FIA Card Services | $8,105.00 | Mr. Clark's Credit Card |
| Chase Card | $2,014.00 | Mr. Clark's Credit Card |
| GMAC Mortgage | $11,033.00 | Personal Mortgage |
| Jon Clark | $30,300.00 | |
| Linda Clark | $18,100.00 | |
| Peter Clark | $14,800.00 | |
| Renee Clark | $5,200.00 | |
| US Bank | $19,900.00 | |
| WAMU | $6,739.00 | |
| Total | $440,293.00 | |

66.   Because Jon Clark made these transfers through companies over which he exerted complete control, he is truly the party transferring these funds and doing so while the companies that he is operating are incurring a trade debt beyond their ability to repay it.

67.   These transfers were done with the actual intent to defraud CSXT because Jon Clark made these transfers while his companies were insolvent or undercapitalized to repay CSXT, he transported freight under a dying company's name, and all transfers were made to insiders, such as himself, his family, his creditors, or his family's creditors.

68.   CSXT, therefore, can cite multiple badges of fraud in connection with the identified transfers.

69.   In total, Jon Clark fraudulently transferred $440,293.00 in funds for his own personal benefit.

**WHEREFORE,** plaintiff CSX Transportation, Inc. respectfully demands that judgment be entered in its favor and against defendant Jonathan Kenneth Clark in the amount of $440,293.00, plus punitive damages and attorneys' fees, together with all costs, prejudgment interest, and such other relief as the Court may allow.

## COUNT IV – FRAUDULENT TRANSFER CLAIM AGAINST LINDA CLARK

70.   CSXT incorporates each and every allegation above as if fully stated here.

71.   While operating the Clark entities, Jon Clark paid company funds to Linda Clark, his mother, and to Community Bank, a lender extending credit to his mother. (Exhibit E)(Deposition Transcript of Jon Clark 168:7-23, 168:24-169:10, 183:14-24).

72.   Linda Clark was not employed by ACS or CBI, nor was she listed as a creditor on the ledgers of either company.

73.   Linda Clark personally received $18,100 in checks while ACS and CBI were incurring substantial debt owed to CSXT. (Exhibit E at 183:14-24).

74.   CBI paid $77,211.00 to Community Bank, Linda Clark's lender, from the proceeds of CBI's sale of the freight transported by CSXT. (Id. at 168:7-169:10).

75.   At the time these payments were made, Linda Clark knew that she was receiving funds without providing any services or new monies for them, because she received checks made payable directly to her and her lender from a firm for which she provided no consideration.

76.   Accordingly, Linda Clark accepted fraudulently-transferred funds, while knowing, or having reason to know, that a major creditor of ACS, CSXT, was being defrauded.

77.   All of these funds were transferred between June 2007 and March 2008.

**WHEREFORE**, plaintiff CSX Transportation, Inc. respectfully demands that judgment be entered in its favor, and against defendant Linda Clark, in the amount of $95,311.00, together with all costs, prejudgment interest, and such other relief as the Court may allow.

## COUNT V – FRAUDULENT TRANSFER CLAIM AGAINST ANDREW CLARK

78.   CSXT incorporates each and every allegation above as if fully stated here.

79.   While operating the Clark entities, Jon Clark transferred company funds to Andrew Clark, his brother. (Exhibit E at 43:24-44:11, 150:16-24).

80.   Andrew Clark received these funds by physical receipt of checks from ACS or CBI totaling $38,000.00.

81.    Andrew Clark received these funds purportedly in repayment of an old debt that was owed by the Clark entities to him, however Andrew Clark was not identified as a creditor on the ACS or CBI ledgers.  (Id.).

82.    Andrew Clark did not provide any services to ACS or CBI at the time these payments were conveyed to him.

83.    Andrew Clark did not provide any funding to ACS or CBI at the time these payments were received.

84.    Andrew Clark, therefore, accepted money from the Clark entities knowing that he was providing no additional benefit to the company paying him the aforementioned funds.

85.    All the transfers at issue occurred between June 2007 and March 2008.

**WHEREFORE**, plaintiff CSX Transportation, Inc. respectfully demands that judgment be entered in its favor and against defendant Peter Clark in the amount of $30,800.00, together with all costs, prejudgment interest, and such other relief as the Court may allow.

Respectfully Submitted,

**BROWNSON & BALLOU, PLLP**

By: _____

Patrick M. Biren, Esquire
225 South Sixth Street
Suite 4800
Minneapolis, MN 55402
Telephone:   (612) 332-4020
Facsimile:   (612 332-4025

**OF COUNSEL**

Jeffrey D. Cohen, Esquire
Nicholas M. Gaunce, Esquire
KEENAN COHEN & HOWARD P.C.
One Pitcairn Place, Suite 2400
165 Township Line Road
Jenkintown, PA 19046
Telephone:   (215) 609-1110
Facsimile:   (215) 609-1117

Date:  June 16, 2011

Attorneys for Plaintiff
CSX Transportation, Inc.