**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| CSX TRANSPORTATION, INC., | Civil No. 11-1593 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| JONATHAN KENNETH CLARK and LINDA CLARK**,** | |
| Defendant. | |

Jeffrey D. Cohen and Nicholas M. Gaunce, **KEENAN, COHEN & HOWARD, PC**, 165 Township Line Road, Suite 2400, Jenkintown, PA 19046, and Patrick M. Biren, **BROWNSON & BALLOU, PLLP**, 225 South Sixth Street, Suite 4800, Minneapolis, MN 55402, for plaintiff.

William J. Joanis, **JOANIS, P.A.**, 701 Fourth Avenue South, Suite 500, Minneapolis, MN 55415, and Stacey Keenan, **LAW OFFICE OF STACEY KEENAN**, 35 Lexington Parkway South, Apartment 37, Minneapolis, MN 55105, for defendants.

This case arises from the extension of credit by Plaintiff CSX Transportation ("CSX") to defendant Jonathan Clark ("Clark")'s business entity, Advanced Concrete Solutions ("ACS"). CSX is an interstate rail carrier, and Clark, through ACS, received more than $800,000 in services from CSX, almost all of which remains unpaid. In February 2011, the Bankruptcy Court issued an order excepting any debts Clark owed to CSX from discharge because it found Clark's credit with CSX was obtained by "false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). In June 2011 CSX brought this action against Clark and his mother, Linda Clark, asserting fraud

and fraudulent transfer.   CSX now moves for summary judgment only on its fraud claims[1] against Clark, arguing that the Bankruptcy Court already determined each and every issue needed to prove those claims.   The Court declines to apply the doctrine of issue preclusion and will deny CSX's motion for summary judgment because some of the issues underlying CSX's fraud claims were stipulated by the parties and not fully litigated before the Bankruptcy Court.

## BACKGROUND[2]

### A.   Underlying Debt

Prior to 2007, ACS operated as a concrete contactor and aggregate material supplier in Minnesota.  (Pl.'s Mem. in Supp., Ex. A, Bankruptcy Order at 2, Docket No. 32.)   As ACS became less profitable, Clark decided to move his business operations to Florida and to concentrate on aggregate material supply.  (*Id.*)   Clark formed Clark Brothers Investments ("CBI") to conduct business operations in Florida.  (*Id.*)   In early 2007, ACS ceased operating as a concrete contractor.  (*Id.*)

---

[1] In its amended complaint, CSX pleads "Count I – Common Law Fraud Against Jonathen [sic] Clark" and "Count II – Common Law Fraud Against Jonathan Clark Established by Collateral Estoppel".  (Am. Compl. ¶¶ 48-58.)

[2] The facts are drawn from the Bankruptcy Court's 2011 order ("Bankruptcy Order").  In that order, the "parties stipulated to many of the facts, which stipulation is incorporated as part of the record." (Pl.'s Mem. in Supp., Ex. A, Bankruptcy Order at 1 n.1, Docket No. 32.)  Clark presents no alternative version of the facts, (*see* Def.'s Mem. in Opp., Ex. B, Bankruptcy Order, Docket No. 38), but he does assert that not all of the issues in this Order were actually litigated (*see* Def.'s Mem. in Opp. at 3).

In April 2007, Clark submitted an Application and Credit Agreement **on behalf of ACS** to CSX, seeking credit to transport aggregate materials from Minnesota to Florida. (*Id.* at 2-3.)   In addition to operating as an interstate rail carrier, CSX offers established companies with credit histories the opportunity to apply for lines of credit through CSX. (*Id.* at 2.)   Under the credit program, a company draws upon a line of credit when it incurs freight charges.  (*Id.*)   In contrast, for new companies without credit histories, CSX offers a debit program, which allows CSX to withdraw funds directly from a customer's bank account.  (*Id.*)   On or about April 20, 2007, CSX executed the Application and Credit Agreement, extending credit to ACS.  (*Id.*)   ACS agreed to "pay all undisputed charges billed by [CSX] so that payment is received by [CSX] within 15 days of the date of each bill."  (*Id.*)

ACS used its line of credit with CSX on behalf of CBI, hiring CSX to transport aggregate construction materials to Florida.  (*Id.*)   CBI then sold the freight. (*Id.*)   From May 2007 to November 2007, CSX provided $808,455 in services.  (*Id.* at 3-4.)   Other than $12,500 paid by ACS in June 2007, neither ACS, CBI, nor Clark made further payments to CSX.  (*Id.*)   Clark "continually interchanged" funds between ACS, CBI, and his personal accounts during 2007.  (*Id.* at 5.)   In March 2007, CSX sued ACS, seeking payment.

### B.   Prior Rulings

On May 7, 2008, this Court entered default judgment in favor of CSX against ACS, in the amount of $808,455.  *CSX Transp., Inc. v. JRC Invs., LLC, d/b/a Advanced*

*Concrete Solutions*, No. 08-0642 (D. Minn. May 7, 2008) (Montgomery, J.).  On June 9, 2009, Clark and his wife filed a petition for bankruptcy protection.

On December 17, 2009, CSX filed an amended complaint against Clark in the bankruptcy case, seeking (among other things) the exclusion from discharge of Clark's debts to CSX.  (Bankruptcy Order at 7.)  On December 8, 2010, the Bankruptcy Court held a trial to determine if Clark's debts to CSX should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

The parties stipulated to the following elements of nondischargeability:

(1)     Clark made a representation;[3]

(4)     that CSX justifiably relied on the representation; and

(5)     that CSX sustained the alleged loss and damages as a proximate result of the representations being made.

(Bankruptcy Order at 7-8).  The Bankruptcy Court held that the final two elements were also met:

(2)     that at the time he made the representation Clark knew it was false; and

(3)     Clark made the representation deliberately and intentionally and with the intent and purpose of deceiving CSX.

(*Id.*)

---

[3] Clark made a representation by submitting the Application and Credit Agreement prepared on behalf of ACS.  In addition, the Bankruptcy Court noted that a debtor "makes a representation each time he draws upon a line of credit" and "a draw upon a line of credit may constitute a fraudulent representation if the debtor had no intention at the time of the draw to repay the debt." (Bankruptcy Order at 8.)

The Bankruptcy Court held that Clark's debts to CSX were nondischargeable. (*Id.* at 11.) Clark has not appealed that determination. Clark now asserts that all of these issues were not fully litigated. Specifically, Clark asserts that CSX's detrimental reliance (element 4) and the amount owed to CSX (element 5) were not actually litigated. CSX argues that the issues were fully litigated and that this Court should apply the doctrine of issue estoppel to grant summary judgment to CSX on its fraud claims.

## ANALYSIS

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II.   CSX'S FRAUD CLAIM AND ISSUE PRECLUSION

CSX moves for summary judgment on its fraud claims against Clark on the grounds that the Bankruptcy Court determined each and every issue needed to prove

those claims.  Under Minnesota law,[4] collateral estoppel, also known as issue preclusion, prevents a party from relitigating issues that have been previously adjudicated where:

> (1)     the issue was identical to one in a prior adjudication;[5]
>
> (2)     there was a final judgment on the merits;
>
> (3)     the estopped party was a party or in privity with a party to the prior adjudication; and
>
> (4)     the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Nelson v. Am. Family Ins. Grp.*, 651 N.W.2d 499, 511 (Minn. 2002).  "Courts do not apply collateral estoppel rigidly and focus instead on whether an injustice would be worked upon the party upon whom the estoppel is urged."  *Id.*  A court "applying collateral estoppel must be convinced that its application is fair."  *Barth v. Stenwick*, 761 N.W.2d 502, 508 (Minn. Ct. App. 2009) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).  "Where the doctrine of collateral estoppel precludes relitigation of an issue, there is no issue of material fact, and summary judgment is proper."  *Id.*

---

[4] The preclusive effect of a federal court judgment is determined by federal common law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).  "However, cases from [this circuit] have consistently concluded that collateral estoppel in a diversity action is a question of substantive law controlled by state common law." *Austin v. Super Valu Stores, Inc.*, 31 F.3d 615, 617 (8th Cir. 1994) (internal quotation and alternation omitted); *Otis v. Burkholder*, No. 10-2155, 2011 WL 1990212, at *2 n.1 (D. Minn. Apr. 5, 2011).  Therefore, the Court will apply Minnesota, not federal law.

[5] The elements of a determination that a debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) are the same as establishing fraud under Minnesota common law.  *In re Swan*, 156 B.R. 618, 623 n.6, 628 (Bankr. D. Minn. 1993).  *Compare Guske v. Guske*, 243 B.R. 359, 362 (B.A.P. 8th Cir. 2000) (elements of discharge) *and Davis v. Re-Trac Mfg. Co.*, 149 N.W.2d 37, 38-39 (Minn. 1967) (elements of fraud).

Clark admits that CSX has proved the first three elements.  As to the fourth prong, Clark objects some of the issues were not fully litigated because the parties stipulated to some of the facts required for the Bankruptcy Court to find nondischargeability under 11 U.S.C. § 523(a)(2)(A).  Specifically, Clark asserts that CSX's detrimental reliance and the amount owed to CSX were not fully and fairly litigated.  The Bankruptcy Court noted that the parties had stipulated to both these elements, and it did not address them further in its order.  (Bankruptcy Order at 8.)

Within an action, stipulations of fact are "controlling and conclusive and courts are bound to enforce them."  *Fenix v. Finch*, 436 F.2d 831, 837 (8th Cir. 1971); *Anderson v. Anderson*, 225 N.W.2d 837, 840 (Minn. 1975) ("Where the parties stipulate as to the facts, the effect of the stipulation is to take the place of evidence.").  But **the doctrine of issue preclusion is generally inapplicable when the issues to be precluded were determined by a stipulation** or consent judgment.  *Gall v. S. Branch Nat'l Bank of S. Dak.*, 783 F.2d 125, 127 (8th Cir. 1986).  "A fact established in prior litigation not by judicial resolution but by stipulation has not been 'actually litigated' and thus is the proper subject of proof in subsequent proceedings."  *United States v. Young*, 804 F.2d 116, 118 (8th Cir. 1986); *G.A.W. III v. D.M.W.*, 596 N.W.2d 284, 287 ("[T]he fact that an issue is the subject of stipulation between the parties does not necessarily mean the issue has been litigated.").  To support this restriction on the doctrine's application, courts and commentators note that applying collateral estoppel to stipulated facts would discourage parties from compromising and narrowing issues because of the risk of future preclusive effect.  *See, e.g., Young*, 804 F.2d at 118.  Consequently, a stipulation **can** have

preclusive effect if "the parties have manifested an intent that the stipulation be binding in a subsequent action[.]" *G.A.W. III.*, 596 N.W.2d at 287 (citing Restatement (Second) of Judgments § 27, cmt. e (1982)).[6]

Because some of the facts were stipulated in the bankruptcy action and CSX has not demonstrated that an exclusion applies to allow that stipulation to bind future actions, **the Court concludes that applying the doctrine of issue preclusion would be inappropriate.** Consequently, the Court will deny the motion for summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that CSX Transportation, Inc.'s Motion for Summary Judgment [Docket No. 29] is **DENIED**.

DATED:   July 25, 2012                           ___s/ John N. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                  United States District Judge

---

[6] At oral argument, CSX suggested that *In re DEF Invs., Inc.*, 186 B.R. 671 (Bankr. D. Minn. 1995) supports the proposition that some stipulations are "actually litigated." The Court disagrees. Rather, that case noted that, when "the parties to the original action disputed the issue and the court resolved it, the doctrine of collateral estoppel is fully applicable no matter how slight the amount of evidence was on which a determination was rendered." *Id.* at 686. Here, the parties did **not** dispute the stipulated issues, and those issues were not actually litigated.